**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **Criminal No. _** |
| | : | |
| **v.** | : | **Violation:** |
| | : | |
| | : | **18 U.S.C. § 1031** |
| **NIKITA DAVIS,** | : | (Major Fraud Against the United States) |
| | : | |
| **Defendant.** | : | |

## INFORMATION

The United States Attorney charges that:

COUNT ONE – MAJOR FRAUD AGAINST THE UNITED STATES

At all times material to this Information:

1. Federal Acquisition Consultants Inc. (FACI), was a government contractor located at 20 F Street, N.W., Washington, D.C.

2. Defendant NIKITA DAVIS was the President and Chief Executive Officer of FACI.

3. The General Services Administration (GSA) is a federal agency that provides centralized procurement for the federal government through, among other mechanisms, the GSA Multiple Awards Schedule (MAS) Program. This program was created to streamline the federal procurement process through pre-negotiated prices and terms. The GSA MAS Program consists of numerous contracts, each identified by a number based upon the category of product or service offering. Obtaining a GSA Schedule contract requires a company to submit a proposal in response to a solicitation by GSA. GSA reviews the proposal, examining factors including commercial sales practices, capabilities, financials, corporate experience (2 years) and past performance.

4. From on or about March 21, 2013, through in or around December 31, 2014, defendant NIKITA DAVIS, executed and attempted to execute – in a procurement of services as

a prime contractor with the value of, at least, one of these prime contracts being in excess of $1,000,000 – a scheme and artifice with intent to defraud the United States and to obtain money and property by means of false and fraudulent pretenses, representations and promises, in violation of Title 18, United States Code, Section 1031.

5. On March 21, 2013, on behalf of FACI, defendant NIKITA DAVIS applied for a GSA MAS Mission Oriented Business Integrated Services (MOBIS) contract 874-1 (Integrated Consulting Services). Schedule 874-1 contractors bid on contracts to provide expert advice and assistance in support of an agency's mission-oriented business functions, including but not limited to contracts for acquisition management and program support. In connection with the application, defendant NIKITA DAVIS made representations about FACI's past work experience. The GSA relied upon these representations (later discovered to be false, as described further below) in awarding FACI a GSA MAS MOBIS contract 874-1 on May 13, 2013.

6. In 2013, the Afghanistan Investment & Reconstruction Task Force (AIRTF), part of the United States Department of Commerce (DOC), facilitated and coordinated the DOC's activities designed to help Afghanistan develop a sustainable economy, stabilize the market, and create strong Afghan-American partnerships. Consistent with one of the AIRTF's core missions -- developing the Afghan private sector – the DOC funded technical assistance and capacity building programs in diverse strategic sectors, including carpets, marble, construction, and information and communications technology. The goal of these programs was to help build the organizational and human capacity of the Afghan private sector and to enhance trade relations.

7. In August of 2013, the DOC solicited requests for quotes (RFQs) from GSA MAS MOBIS 874-1 contractors eligible for Small-Business Set-Asides on contracts related to AIRTF's mission in Afghanistan (the "DOC contracts"). Through defendant NIKITA DAVIS, FACI bid on

the contracts. In September of 2013, FACI was awarded seven DOC contracts requiring FACI to perform a number of different tasks in support of AIRTF's mission in Afghanistan. A total of $3,164,076 was obligated on the DOC contracts.

8. Through defendant NIKITA DAVIS, FACI ultimately expended the entire amount obligated, $3,164,076. The table below identifies and summarizes each contract, the amount obligated, the date of award, the date of completion, and the contract's objective.

| **Contract No. (last 3 digits)** | **Amount Obligated** | **Date of Award** | **Date of Completion** | **Contract's Objective** |
|---|---|---|---|---|
| 626 | $219,090 | 9/12/13 | 9/29/14 | Monitoring and evaluating compliance by third-party-vendors implementing DOC-funded programs designed to promote business development and to develop the marble industry. |
| 630 | $195,236 | 9/30/13 | 11/13/14 | Acting as a Program Advisor on AIRTF's Sheep to Shop program in Afghanistan, which program was designed to help Afghan carpet traders to develop long-term business relationships with international importers by improving the entire industry from the creation of wool through and including the international order and delivery process. |
| 633 | $188,485 | 9/30/13 | 11/13/14 | Acting as an Expert Carpet Advisor to provide training where needed along the carpet supply chain in Afghanistan. |
| 634 | $188,485 | 9/14/13 | 11/13/14 | Acting as a Sheep to Shop Advisor to provide training where needed along the carpet supply chain in Afghanistan. |
| 667 | $60,932 | 9/18/13 | 7/13/14 | Developing a stronger monitoring and evaluation framework for programs implemented to develop the Afghan sector with improved organizational practices and greater accountability and transparency. |
| 676 | $233,397 | 9/18/13 | 9/29/14 | Performing research and analysis identifying the pending changes, challenges and opportunities in the Afghan construction sector with the goal |

| Contract No. (last 3 digits) | Amount Obligated | Date of Award | Date of Completion | Contract's Objective |
|---|---|---|---|---|
| | | | | of assisting Afghanistan in developing a market-based, sustainable construction sector. |
| 714 | $2,078,451 | 9/30/13 | 12/31/14 | Developing programs to identify capable Afghan business people in the food packaging and processing industry and in the construction industry with an interest in expanding their markets regionally and internationally and then helping them to do so through research, and participation at trade shows, conferences and trade missions. |
| **Total Amount Obligated** | $3,164,076 | | | |

9. Although the DOC contracts were rendered complete, NIKITA DAVIS improperly billed the United States under the contracts for travel ($401,802.68), danger pay ($201,050.85), insurance ($60,646), security ($148,894), and labor ($377,304), resulting in an improper gain to defendant NIKITA DAVIS of $1,189,697.53.

10. Defendant NIKITA DAVIS made material false statements to the GSA to obtain the GSA MAS MOBIS 874-1 contract that made FACI eligible to bid on the DOC contracts. For example, defendant NIKITA DAVIS represented to the GSA that FACI received $520,848 in compensation from SF Business Solutions (SFBS). FACI used SFBS as a reference for past performance. An interview with the owner of SFBS disclosed SFBS did hire FACI as a subcontractor but did not pay FACI for any work under the contract because the product was unacceptable. The GSA relied on the information provided by defendant NIKITA DAVIS to determine if FACI met the minimum standards for a GSA MAS MOBIS contract. FACI would not have received a GSA MAS MOBIS contract if NIKITA DAVIS had not misrepresented FACI's

past work performance. Without the GSA MAS MOBIS contract, FACI would have been ineligible to bid successfully on the DOC contracts that resulted in the improper $1,189,697.53 gain to NIKITA DAVIS.

**(Major Fraud Against the United States, in violation of Title 18, United States Code, Section 1031.)**

CHANNING D. PHILLIPS
UNITED STATES ATTORNEY
D.C. Bar No. 415793

By: ______________________________
EMILY A. MILLER
D.C. Bar No. 462077
Assistant United States Attorney
Fraud & Public Corruption Section
555 4th Street, N.W., 5th Floor
Washington, D.C. 20530
(202) 252-6988